FRED E. ILLSTON, Respondent, *v.* LETITIA EVANS, Appellant, Impleaded with DE FOREST J. EVANS.

*When a verdict may be directed — an undisclosed principal is not liable for goods furnished her agent in a new business carried on by the agent in his own name — the rule in reference to a partnership, distinguished.*

A verdict can only be directed where the evidence is undisputed, or so certain and convincing that a reasonable man could come to but one conclusion.

The doctrine that one who has dealt with an agent in a matter within his authority has a right to assume in subsequent dealings with the agent, unless informed to the contrary, that the agency still continues, does not apply where the agent of an undisclosed principal afterwards embarks in a new enterprise in his own name, the fact that he was ever an agent being unknown to the party with whom he deals; hence, where an ice dealer delivers ice to the husband of the proprietor of a boarding house upon the sole credit of the husband and in ignorance of the fact that he is his wife's agent, the wife is not liable for ice furnished by the dealer, upon the husband's sole credit, to a boarding house carried on by the husband in his own name at a different place from that in

which the wife's boarding house is situated, the ice dealer being unaware that the husband occupied a different relation to the new enterprise from that which he bore to the old one.

The foregoing case distinguished from that of one dealing with a partnership, although unaware of the names of its members.

APPEAL by the defendant, Letitia Evans, from a judgment of the County Court of Tompkins county, entered in the office of the clerk of the county of Tompkins on the 11th day of June, 1897, upon the verdict of a jury rendered by direction of the court; also from an order entered in said clerk's office on the 23d day of December, 1897, denying the defendant's motion for a new trial made upon a case and exceptions, and also from the judgment entered thereon in said clerk's office on the 23d day of December, 1897.

*M. N. Tompkins*, for the appellant.

*Randolph Horton*, for the respondent.

PUTNAM, J.:

This action was brought in a Justice's Court against the appellant Letitia Evans and her husband, De Forest J. Evans, to recover for a quantity of ice alleged to have been sold them by the plaintiff at the Cascadilla Building, in the city of Ithaca, in the summer of 1895. A judgment was obtained in favor of the plaintiff, and the defendant Letitia Evans appealed to the County Court of Tompkins county where a new trial was had. On such new trial the county judge directed a verdict in favor of the plaintiff, and judgment was thereupon entered in his favor against the defendant Letitia Evans, from which she has taken an appeal to this court.

It was shown on the trial that, prior to the delivery of the ice in question by the plaintiff at the Cascadilla Building, the defendant Letitia Evans, being the owner of a house on Stewart avenue in the city of Ithaca, had conducted therein, on her own account, the business of taking lodgers and boarders. The plaintiff had furnished ice to her at said place, but had charged the same and given credit therefor to her husband, who was acting as her agent, the plaintiff at the time being unware that the business was, in fact, that of the appellant. When the new business was started in the Cascadilla Building in the summer of 1895 by the defendants, or one of them, he also charged the ice there delivered to De Forest J. Evans, and

was not informed that the party who carried on the business at that place was not the one who conducted the boarding house on Stewart avenue.

Had this case been submitted to the jury, we are disposed to think that the evidence would have sustained a finding that the appellant was the party who carried on the business at the Cascadilla Building at the time in question. The lease was taken in her name; the furniture therein, or the greater part thereof, was owned by her, and certain declarations and admissions on her part were proved, all tending to show that she was the proprietor of the business there carried on.

But there was other evidence in the case, tending to show a contrary state of facts, sufficient to authorize a finding by the jury in favor of the appellant.

Both of the defendants testified on the trial that the business at Cascadilla place was, in fact, that of the husband; that the appellant had no interest whatever therein; that while that business was being conducted, she was engaged with her own business at her house on Stewart avenue. De Forest J. Evans testified that the ice was contracted for by him of the plaintiff in his own name. It was shown that it was charged to De Forest J. Evans on plaintiff's books, and the bills therefor, made out by the plaintiff against De Forest J. Evans, were introduced in evidence on the trial.

We think that, on the evidence, the court was not authorized to direct a verdict, but should have submitted the questions of fact in the case to the jury. A verdict can only be directed where the evidence is undisputed, or so certain and convincing that a reasonable man could come to but one conclusion. "If there is ground for opposite inferences, and a conclusion either way would not shock the sense of a reasonable man, then the case is for the jury, although the judge may entertain a clear and decided conviction that the truth is on this or that side of the controversy." (*Bagley* v. *Bowe*, 105 N. Y. 171, 179; *Bulger* v. *Rosa*, 119 id. 459.) We do not deem it necessary, and will not undertake, to recapitulate the testimony. It is sufficient to say that, under the doctrine stated in the above-cited and kindred authorities, it raised a question of fact which should have been submitted to the jury.

The learned counsel for the respondent urges that the plaintiff, immediately prior to the sale of the ice in question, had been dealing with the appellant, although as an undisclosed principal, at her house on Stewart avenue, and was not informed that the business at the Cascadilla house was not carried on by the same person who was the proprietor of the boarding house on Stewart avenue; that there was no conflict of the testimony in this regard, and that hence the direction of a verdict was proper.

The answer to this position is that the business carried on at the Cascadilla Building was a new, distinct and different enterprise from that conducted at Stewart avenue. It was not a continuation of the same business that was and had been carried on at the latter place, and from the testimony the jury could have found that this new and different business conducted at the Cascadilla Building was carried on by De Forest J. Evans on his own account, and that he contracted for the ice in question with the plaintiff in his own name.

Again, the ice furnished at the appellant's house on Stewart avenue was not sold on her credit, but on that of her husband. She was an undisclosed principal, and the plaintiff was not aware of the agency of De Forest J. Evans. Hence the plaintiff did not afterwards deliver the ice in question at Cascadilla place on the credit of the appellant, but on that of her husband. He intended to and did sell the ice to the latter on his credit. The doctrine that one who has dealt with an agent in a matter within his authority, has a right to assume in subsequent dealings with him, unless otherwise informed, that the agency continues, cannot be held to apply to a case where the agent of an undisclosed principal afterwards embarks in a new enterprise in his own name, the fact that he ever was an agent being unknown to the party with whom he deals.

Counsel for the respondent calls our attention to authorities holding that one who has had dealings with a copartnership without being aware of the names of its members, can hold one of the partners who has retired from the firm responsible on account of dealings with the firm subsequent to such retirement, unless he has received actual notice thereof. (*Elmira Iron & Steel Rolling Mill Co.* v. *Harris*, 124 N. Y. 280; *Howell* v. *Adams*, 68 id. 314.) We think the doctrine established in those authorities is not applicable to the case under consideration. One dealing with a copart-

nership may not know the names of its members, but he knows the name of the firm — the party with whom he is dealing. He may consult a mercantile agency, or seek in other ways information as to the standing and credit of the firm, while not knowing the names of its members. In dealing with the firm he relies upon the responsibility of the unknown and undisclosed members thereof. (See *Elmira Iron & Steel Rolling Mill Co. v. Harris, supra,* 292, 293.) Hence a necessity, in case of a change in the constitution of the copartnership by the retirement of one of the partners, of giving notice to one who has been dealing with it. Such person had in fact dealt with the firm on the credit of the retiring as well as that of the other partners, although unknown to him.

There is a clear distinction between the facts considered in the authorities referred to and those appearing in this case. One dealing with a copartnership, although unaware of the names of its members, relies upon the responsibility of the principal with whom he deals — the several persons conducting business as a firm under a copartnership name which he knows, although he may not know the individual names of the members; and he is entitled, in subsequent dealings with the firm, to notice of the retirement of a member on whose responsibility in former dealings he has necessarily relied. But in the case under consideration, prior to the sale of the ice in question, the plaintiff did not know that the appellant's husband ever acted as her agent in any business carried on at the house on Stewart avenue or elsewhere. He did not know the appellant in any of his dealings with her husband. In selling the ice in question, which, as a matter of fact, the jury could have found from the testimony was sold to De Forest J. Evans, he did not rely upon her responsibility. He did not charge it to her, and he sold it, relying upon the credit of her husband.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concurred.

Judgment and order reversed and a new trial granted, costs to abide the event.